**LESLIE A. FARBER, LLC**
33 Plymouth Street, Suite 204
Montclair, NJ 07042
Ph. (973) 509-8500
eMail:  LFarber@LFarberLaw.com
Attorneys for Defendant John Doe subscriber
 assigned IP address 108.46.43.152

| | |
|---|---|
| **STRIKE 3 HOLDINGS, LLC,** | UNITED STATES DISTRICT COURT |
| | SOUTHERN DISTRICT OF NEW YORK |
| *Plaintiff,* | |
| | Hon. Alvin K. Hellerstein, U.S.D.J. |
| vs. | |
| | Case No. 1:17-cv-08956 (AKH) |
| **JOHN DOE subscriber assigned IP address 108.46.43.152**, | |
| | <u>CIVIL ACTION</u> |
| *Defendant.* | |

## MEMORANDUM OF LAW OF DEFENDANT JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 108.46.43.152 IN SUPPORT OF MOTION TO QUASH SUBPOENA

LESLIE A. FARBER, ESQ.
    On the Brief

 

LESLIE A. FARBER, LLC
33 Plymouth Street, Suite 204
Montclair, NJ 07042
Attorneys for Defendant John Doe
 subscriber assigned IP address
 108.46.43.152

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

TABLE OF EXHIBITS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Relevant Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Overview of Mass "John Doe" Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    THE COURT'S PRIOR ORDER SHOULD BE VACATED AND PLAINTIFF'S
    SUBPOENA SERVED ON VERIZON QUASHED WHERE DEFENDANT JOHN DOE
    HAS STANDING TO CHALLENGE THE SUBPOENA, THE SUBPOENA WOULD
    SUBJECT DEFENDANT TO UNDUE BURDEN, ANNOYANCE, HARASSMENT
    AND EXPENSE, AND BECAUSE THE SUBPOENA RESPONSE WILL NOT
    IDENTIFY THE ALLEGED OFFENDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        Defendant's privacy interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        Undue burden, annoyance and/or embarrassment. . . . . . . . . . . . . . . . . . . . . . . . 6

        Plaintiff's Discovery Request Will Not Identify the Alleged Offender. . . . . . . . 10

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## CASES

Boy Racer, Inc., v. Does 1-60, No. 11-01738 (ECF No. 24) (N.D. Cal. Aug. 19, 2011). . . . . . . . 6

Hard Drive Prods., Inc. v. Does 1-90, No. 11-03825 (ECF No. 18), 2012 WL 1094653
    (N.D. Cal. Mar. 30, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Hard Drive Prods., Inc., v. Does 1-130, No. C-11-3826 (ECF No. 16), 2011 U.S. Dist.
    LEXIS 132449 (N.D. Cal. Nov. 16, 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hard Drive Prods., Inc., v. Does 1-188, 809 F. Supp.2d 1150 (N.D. Cal. 2011). . . . . . . . . . . . . 6

Hard Drive Productions, Inc. v. Does 1-48, No. 11-9062 (ECF No. 28), 2012 WL
    2196038, at 3 (N.D. Ill. June 14, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

In Re BitTorrent Adult Film Copyright Infringement Cases, No. 12-01147 (ECF No. 4),
    2012 WL 1570765 (E.D.N.Y. May 1, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 12

Ingenuity 13 LLC. v. John Doe, No. 12-8333 (ECF No. 48) (C.D. Cal. Feb. 7, 2013). . . . . . . . . 7

Malibu Media, LLC v. Does 1-25, No. 12-362 (ECF No. 27), 2012 WL 2367555 (S.D.
    Cal. June 21, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Malibu Media, LLC, v. John Does 1-11, 12-07615 (ECF No. 8) (D.N.J. Feb. 26, 2013). . . . . . . 12

Malibu Media, LLC, v. John Does, No. 2:12-01642 (ECF No. 32) (D.C. Cal. Oct. 10,
    2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

MCGIP v. Does 1-149, No. 11-02331 (ECF No. 14), 2011 WL 4352110 (N.D. Cal.
    Sept. 16, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Modern Woman, LLC, v. Does 1-X, 12-04858 (ECF No. 6) (D.N.J. Feb. 27, 2013). . . . . . . . . . 12

Modern Woman, LLC, v. Does 1-X, 12-04859 (ECF No. 6) (D.N.J. Feb. 26, 2013). . . . . . . . . . 12

Modern Woman, LLC, v. Does 1-X, 12-04860 (ECF No. 6) (D.N.J. Feb. 27, 2013). . . . . . . . . . 12

Nu Image, Inc., v. Does 1-3932, No. 11-00545 (ECF No. 244) (M.D. Fla. May 23, 2012). . . . . . 6

On the Cheap, LLC, v. Does 1-5011, No. C10-4472 (ECF No. 66), 2011 WL 4018258
    (N.D. Cal. Sept. 6, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

SBO Pictures, Inc., v. Does 1-3,036, No. 11-4220 (ECF No. 14), 2011 WL 6002620
    (N.D. Cal. Nov. 30, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

Third Degree Films v. Does 1-47, No. 12-10761 (ECF No. 31) (D. Mass. Oct. 2, 2012).. . . . . . . 2

Third Degree Films, Inc. v. Does 1-108, No. 11-3007 (ECF No. 31), 2012 WL 669055 (D. Md. Feb. 28, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Third Degree Films, Inc., v. John Does 1-110, No. 12-5817 (ECF No. 7) (D.N.J. Jan. 17, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VPR Internationale v. Does 1-1,017, No. 11-02068 (ECF No. 15 ), 2011 WL 8179128 (C.D. Ill. Apr. 29, 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Washington v. Thurgood Marshall Acad., 230 F.R.D. 18, 21 (D.D.C. 2005). . . . . . . . . . . . . . 5

**STATUTES**

17 U.S.C. § 505. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**RULES**

Fed. R. Civ. P. 12.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 21.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 26.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

Fed. R. Civ. P. 26(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 45.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

Fed. R. Civ. P. 45(c)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**OTHER SOURCES**

H.R. Rep. 98-934 (1984), reprinted in 1984 U.S.C.C.A.N. 4655. . . . . . . . . . . . . . . . . . . . . . . 5

James DeBriyn, Shedding Light on Copyright Trolls:  An Analysis of Mass Copyright Litigation in the Age of Statutory Damages, 19 U.C.L.A. Ent. L. Rev. 79 (2012). . . . . . . 2

Matthew Sag, Copyright Trolling, An Empirical Study, 100 Iowa L. Rev. 1105 (2015). . . . . . . . 8

**TABLE OF EXHIBITS**

Subpoena dtd. Dec. 11, 2017, with Order filed Dec. 4, 2017. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## PRELIMINARY STATEMENT

Movant-defendant John Doe subscriber assigned IP address 108.46.43.152 (hereinafter "John Doe"), by and through counsel, and pursuant to FED. R. CIV. P. 45(c)(3), hereby moves this Court for an Order Vacating its prior Order of December 4, 2017 (ECF No. 9), Quashing the Rule 45 Subpoena, dated December 11, 2017, and returnable January 25, 2018, issued to and served upon Verizon, which is this defendant's Internet Service Provider ("ISP"), and which seeks documents that identify this defendant's name and address.

Defendant John Doe submits that such an Order is warranted because (1) the subpoena presents an undue burden under Rule 45 and the Order would protect John Doe under Rule 26; (2) the subpoena seeks information not directed to advancing plaintiff's claim;  (3) per Rule 26(b)(1), the subpoena "is not relevant to any party's claim or defense."  The grounds for this motion are more fully set forth in this memorandum of law.  For the reasons stated herein below, the Motion should be granted.

1

## STATEMENT OF FACTS

**Relevant Procedural History**

Plaintiff filed a Complaint on November 16, 2017 (ECF No. 1), against John Doe subscriber assigned IP address 108.46.43.152, alleging copyright infringement.  Plaintiff allegedly owns the relevant rights to the unnamed works listed on Exhibit A attached to plaintiff's Complaint (the "Works"), which it claims as the basis for this suit.  Plaintiff alleges that defendant downloaded plaintiff's works, consisting of pornographic films, between March 27, 2017, and October 3, 2017.  *See* ECF Doc. 1-1.

On December 1, 2017 (ECF No. 6), plaintiff filed a motion seeking an Order for early discovery from this Court, which was granted on December 6, 2017 (ECF No. 9).  Plaintiff then served Verizon, is defendant's internet service provider ("ISP"), with a Subpoena dated December May 22, 2015, returnable September 29, 2015, which seeks John Doe's real name and address.  Verizon later sent these documents to defendant.  *See* Subpoena dated December 11, 2017, with Order filed December 4, 2017 (hereinafter "Exhibit A").  Plaintiff's Motion for an extension of time in which to serve defendant was granted on December 6, 2017 (ECF No. 9).

This Motion followed.

**Overview of Mass "John Doe" Litigation**

This case is the latest installment in a wave of mass "John Doe" copyright troll[1] infringement lawsuits that have swept through district courts around the country.  Certain features have become hallmarks of this brand of litigation.

---

[1] *Third Degree Films v. Does 1-47,* No. 12-10761 (ECF No. 31 at 1) (D. Mass. Oct. 2, 2012)
         A copyright troll is an owner of a valid copyright who brings an infringement action
         "not to be made whole, but rather as a primary or supplemental revenue stream."
*Id.* at n. 1 (citing James DeBriyn, *Shedding Light on Copyright Trolls:  An Analysis of Mass Copyright Litigation in the Age of Statutory Damages,* 19 U.C.L.A. ENT. L. REV. 79, 86 (2012)).

Next, the plaintiff seeks an order for early discovery from the court, in the form of a subpoena to an ISP (Verizon in this case) to obtain the name, address, telephone numbers, etc., of the subscriber associated with particular IP address.  The individual identified by the subpoena is the individual whose name appears as a subscriber on the ISP's records at a particular location, date and time, but who may have no connection to any purported actual infringer of a plaintiff's alleged copyrights.  As there is no identifiable defendant at this stage, a plaintiff is allowed to make various questionable representations (like those challenged herein) in support of its early discovery motion.

After obtaining the ex parte discovery, a plaintiff may commence a series of harassing calls and/or letters to the subscriber or her or his family at home or work, threatening to sue (regardless of whether or not such subscriber actually infringed any copyright) for the alleged copying and distribution of the aforementioned pornographically titled adult work.  Or, as the plaintiffs are quick to reassure the subscriber, one can make it all go away by simply paying several thousand dollars.  Subscribers are faced with this choice, whether or not they have ever infringed any copyright, and whether or not they have ever heard of the BitTorrent protocol.  As plaintiffs know, a subscriber's decision to settle often is wholly unrelated to whether or not they have infringed any copyrighted work, and is influenced solely by a desire to avoid the embarrassment and legal expense required to establish one's innocence.

Plaintiffs may continue to threaten future suits until the statute of limitations expires, despite the clear lesson of the recent wave of suits:  only a small fraction of those threatened are ever served in a copyright infringement action.  The reason is simple:  plaintiffs have no idea whether the subscriber committed copyright infringement, and, if they *actually* served a summons and complaint on a subscriber (rather than simply threatening to do so), they would

immediately expose themselves to potential liability for costs and attorney fees under 17 *U.S.C.*

§ 505.

**LEGAL ARGUMENT**

**THE COURT'S PRIOR ORDER SHOULD BE VACATED AND PLAINTIFF'S SUBPOENA SERVED ON VERIZON QUASHED WHERE DEFENDANT JOHN DOE HAS STANDING TO CHALLENGE THE SUBPOENA, THE SUBPOENA WOULD SUBJECT DEFENDANT TO UNDUE BURDEN, ANNOYANCE, HARASSMENT AND EXPENSE, AND BECAUSE THE SUBPOENA RESPONSE WILL NOT IDENTIFY THE ALLEGED OFFENDER**. FED. R. CIV. P. 45.

A.    Defendant's privacy interest

A party has standing to challenge a subpoena issued to a third party when the party has a personal or proprietary interest in the information sought by the subpoena.  *See Washington v. Thurgood Marshall Acad.,* 230 *F.R.D.* 18, 21 (D.D.C. 2005).  Movant herein has a clear personal and proprietary interest in the personal details sought.  Congress recognizes that subscribers have a **privacy interest** in their personally identifying information retained by ISPs.  *See* H.R. Rep. 98-934 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655 at *79 ("The Congress is recognizing a right of privacy in personally identifying information collected and held by a cable company . . .").

Courts addressing the privacy issue in similar contexts show that this defendant has standing because the subpoena implicates defendant's privacy interests.  *See Hard Drive Productions, Inc. v. Does 1-48,* No. 11-9062 (ECF No. 28 at 7), 2012 WL 2196038, at 3 (N.D. Ill. June 14, 2012) ("Generally, a party lacks standing to quash a subpoena issued to a nonparty **unless the party has a claim of privilege attached to the information sought or unless it implicates a party's privacy interests.**") (emphasis added).  Courts have found standing in similar cases, even where the defendant's privacy interest is "minimal at best."  *See, e.g., Malibu Media, LLC v. Does 1-25,* No. 12-362 (ECF No. 27 at 3), 2012 WL 2367555, *2 (S.D. Cal. June 21, 2012).  Because defendant John Doe here has at least a minimal privacy interest in the

information requested by the subpoena, defendant has standing to object. *Third Degree Films, Inc. v. Does 1-108,* No. 11-3007 (ECF No. 31 at 6), 2012 WL 669055, *2 (D. Md. Feb. 28, 2012) ("however minimal or 'exceedingly small' the Doe Defendants' interests here are, parties need only have 'some personal right or privilege in the information sought' to have standing to challenge a subpoena to a third party").

Numerous other courts, faced with nearly identical BitTorrent lawsuits, have likewise concluded that the account-holder associated with an identified IP address may challenge subpoenas issued to the subscriber's ISPs. *See, e.g., Hard Drive Prods., Inc., v. Does 1-188,* 809 F. Supp.2d 1150 (N.D. Cal. 2011) (order granting Doe's motion to quash); *Boy Racer, Inc., v. Does 1-60,* No. 11-01738 (ECF No. 24) (N.D. Cal. Aug. 19, 2011) (order granting Doe's motion to quash and dismiss Case without prejudice); *Nu Image, Inc., v. Does 1-3932,* No. 11-00545 (ECF No. 244) (M.D. Fla. May 23, 2012) (order granting Doe's motion to quash or, in the alternative, to sever and dismiss); *In Re BitTorrent Adult Film Copyright Infringement Cases,* No. 12-01147 (ECF No. 4), 2012 WL 1570765 (E.D.N.Y. May 1, 2012) (granting motions to quash from underlying action).

Thus, defendant in this case has standing to challenge the subpoena served on Verizon.

B.    Undue burden, annoyance and/or embarrassment

Furthermore, this defendant has standing under FED. R. CIV. P. 26 and/or 45 to move to quash the subpoena, which will subject her, him or it to undue burden, annoyance and/or embarrassment. As explained above,

> once the plaintiff obtains the identities of the IP subscribers through early discovery,
> it serves the subscribers with a settlement demand . . . the subscribers, often embar-
> rassed about the prospect of being named in a suit involving pornographic movies,
> settle . . . . Thus, these mass copyright infringement cases have emerged as a strong

tool for leveraging settlements – a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.

*MCGIP v. Does 1-149*, No. 11-02331 (ECF No. 14 at note 5), 2011 WL 4352110, at *4 (N.D. Cal. Sept. 16, 2011) (emphasis added).

*See also On the Cheap, LLC, v. Does 1-5011*, No. C10-4472 (ECF No. 66 at 11), 2011 WL 4018258 at *11 (N.D. Cal. Sept. 6, 2011) (plaintiff's settlement tactics leave defendants with "a decision to either accept plaintiff's demand or incur significant expense to defend themselves" and finding that this does not "comport with the 'principles of fundamental fairness' ").

Court have recognized that plaintiffs like this one "would likely send settlement demands to the individuals whom the ISP identified as the IP subscriber. 'That individual – whether guilty of copyright infringement or not – would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the settlement demand. **This creates great potential for a coercive and unjust settlement.' "** *SBO Pictures, Inc., v. Does 1-3,036*, No. 11-4220 (ECF No. 14 at 8), 2011 WL 6002620, at *8 (N.D. Cal. Nov. 30, 2011) (quoting *Hard Drive Prods., Inc., v. Does 1-130*, No. C-11-3826 (ECF No. 16), 2011 U.S. Dist. LEXIS 132449 at *9 (N.D. Cal. Nov. 16, 2011) (emphasis added). As one court recently noted,

The Court has previously expressed concern that in pornographic copyright infringement lawsuits like these, the economics of the situation makes it highly likely for the accused to immediately pay a settlement demand. Even for the innocent, a four-digit settlement makes economic sense over fighting the lawsuit in court – not to mention the benefits of preventing public disclosure (by being named in a lawsuit) of allegedly downloading pornographic videos.

*Ingenuity 13 LLC. v. John Doe,* No. 12-8333 (ECF No. 48 at 7) (C.D. Cal. Feb. 7, 2013).

"[T]he court will not assist a plaintiff who seems to have no desire to actually litigate but instead seems to be using the courts to pursue an extrajudicial business plan against possible infringers

(and innocent others caught up in the ISP net)." *Hard Drive Prods., Inc. v. Does 1-90,* No.

11-03825 (ECF No. 18 at 11), 2012 WL 1094653, at *7 (N.D. Cal. Mar. 30, 2012).

This Court noted in a July 6, 2015, decision by the Hon. Alvin K. Hellerstein, U.S.D.J.,

denying Malibu Media (like plaintiff here) permission to issue a Rule 45 subpoena:

> Recent empirical studies show that the field of copyright litigation is increasingly
> being overtaken by "copyright trolls," roughly defined as plaintiffs who are "more
> focused on the business of litigation than on selling a product or service or licensing
> their [copyrights] to third parties to sell a product or service."   Matthew Sag,
> *Copyright Trolling, An Empirical Study,* 100 IOWA L. REV. 1105, 1108 (2015).   "The
> paradigmatic troll plays a numbers game in which it targets hundreds or thousands
> of defendants, seeking quick settlements priced just low enough that it is less
> expensive for the defendant to pay the troll rather than defend the claim."  *Id.* The
> lawsuits most frequently target anonymous John Does for alleged infringement
> related to the use of BitTorrent.  Indeed, of "the 3,817 copyright law suits filed in
> 2013, over 43% were against John Does and more than three-quarters of those
> related to pornography." *Id.* at 1108-09.  But almost none ever reaches a hearing.
> Rather, the "lawsuits are filed to take advantage of court ordered discovery [under
> Fed. R. Civ. P. 26(d)] to break the veil of anonymity that separates IP addresses from
> the account information of actual human beings."  *Id.* at 1109;  *see also Digital Sin,
> Inc. v. Does 1-176,* 279 F.R.D. 239, 241 (S.D.N.Y. 2012).  They then use this
> information to quickly negotiate settlements on mass scale without any intention of
> taking the case to trial.  *See, e.g., Media Prods., Inc., DBA Devil's Film v. John Does
> 1-26,* No. 12-cv-3719, at 4 (S.D.N.Y. June 18, 2012) (explaining that the settlements
> in these BitTorrent cases are "are for notoriously low amounts relative to the possible
> statutory damages, but high relative to the low value of the work and minimal costs
> of mass litigation.  Cases are almost never prosecuted beyond sending demand letters
> and threatening phone calls.").
>
> In 2012, judges in the Southern District and across the country began
> awakening to the danger of copyright trolls, especially in the context of pornography.
> For example, the late Judge Harold Baer, Jr. explained that "[i]n such cases, there is
> a **risk not only of public embarrassment for the misidentified defendant, but
> also that the innocent defendant may be coerced into an unjust settlement with
> the plaintiff to prevent the dissemination of publicity surrounding unfounded
> allegations**."  *Media Prods., Inc.* [*DBA Devil's Film v. John Does 1-26,*] No.
> 1:12-cv-03719 (ECF No. 5 at 4) (S.D.N.Y. June 18, 2012) (Baer, J.).  The largest
> copyright trolls were increasingly unscrupulous in abusing the litigation process to
> exploit this dynamic.  *See In re BitTorrent Adult Film Copyright Infringement Cases,*
> 296 F.R.D. 80, 89 (E.D.N.Y. 2012).[2] ("The most persuasive argument against

---

[2] An alternative citation is *In re BitTorrent Adult Film Copyright Infringement Cases,* No.

(continued...)

permitting plaintiffs to proceed with early discovery arises from the clear indicia, both in this case and in related matters, that plaintiffs have employed abusive litigations tactics to extract settlements from John Doe defendants."); *[ ] Patrick Collins, Inc. v. John Does 1-37,* No. [2:12-cv-01259], 2012 WL 287832, at *3 n. 2 (C.D. Cal. Jul. 11, 2012) ("the federal courts are not flexible enough to be shaped into 'cogs in a plaintiffs copyright-enforcement business model. **The Court will not idly watch what is essentially an extortion scheme, for a case that [Plaintiffs have] no intention of bringing to trial.'** "); *Malibu Media, LLC v. Does 1-5,* No. 1:12-cv-02950 (ECF No. 7), 2012 WL 2001968, at * 1 (S.D.N.Y. June 1, 2012) (Oetkin, J.) ("This Court shares the growing concern about unscrupulous tactics used by certain plaintiffs, especially in the adult films industry, to shake down the owners of specific IP addresses from which copyrighted adult films were allegedly downloaded."); *Digital Sins, Inc. v. John Does 1-245,* No. 1:l 1-cv-08170 (ECF No. 18), 2012 WL 1744838, at *3 (S.D.N.Y. May 15, 2012) (McMahon, J.) ("In these BitTorrent cases, []numerous courts have already chronicled abusive litigation practices ..."); *SEO Pictures, Inc. v. Does 1-20,* No. 12-cv-03925, 2012 WL 2034631, at * 1 (S.D.N.Y. June 5, 2012) ("Finally, early discovery has been used repeatedly in cases such as this one to harass and demand of defendants quick settlement payments, regardless of their liability."); *Digital Sin, Inc. v. Does 1-176,* 279 F.R.D. 239, 242 (S.D.N.Y. 2012) ("This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The Plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does.").

These tactics, warned Judge Baer, "could turn copyright protection on its head." *Media Prods., Inc., DBA Devil's Film v. John Does 1-26,* No. 1:12-cv-03719 (ECF No. 5 at 4) (S.D.N.Y. June 18, 2012) (Baer, J.). In order to prevent that from happening, judges began attaching conditions to the various subpoenas they issued, but have found that plaintiffs often ignore them.

*Malibu Media, LLC, v. John Doe subscriber assigned IP address 66.108.67.10,* No. 1:15-cv-04369 (ECF No. 10 at 5-6) (S.D.N.Y. July 6, 2015) (Hellerstein, J.) (footnote omitted, emphasis added).

As such, because of the track record and tactics of copyright trolls like plaintiff here, this

defendant's privacy interests are at stake and defendant no doubt will be subjected to annoyance,

harassment, and undue burden and expense if this Court does not grant the requested relief or

otherwise prohibit plaintiff from obtaining Movant's identity and address.

---

[2] (...continued)
12-01147 (ECF No. 4 at 16), 2012 WL 1570765 (E.D.N.Y. May 1, 2012)

C.  Plaintiff's Discovery Request Will Not Identify the Alleged Offender

Another problem with this case is that plaintiff will be unable to show that any actual infringer (if there actually is one) is the subscriber John Doe, and not some third person in this defendant's business or household, or a family guest or customer, or a neighbor, or a stranger driving by who may have hacked or leeched this defendant's internet access.

As a court noted in a series of these cases a couple of years ago,

> the subscriber information is not a reliable indicator of the actual infringer's identity. Due to the proliferation of wireless internet and wireless-enabled mobile computing (laptops, smartphones, and tablet computers), it is commonplace for internet users to share the same internet connection, and thus, share the same IP address. Family members, roommates, employees, or guests may all share a single IP address and connect to BitTorrent. If the subscriber has an unsecured network, it is possible that the actual infringer could be a complete stranger standing outside the subscriber's home, using the internet service and who's internet activity is being attributed to the unknowing subscriber's IP address. Thus, obtaining the subscriber information will only lead to the person paying for the internet service and not necessarily the actual infringer.
> It is even more unlikely that early discovery will lead to the identities of Defendants given how commonplace internet usage outside one's home has become. An increasing number of entities offer publically-accessible internet service; consider coffee shops, workplaces, schools, and even cities. Mobile-computing allows internet users and copyright infringers, to connect to the internet in any such location. A given entity may have hundreds or thousands of users in a one to two-month period. Obtaining the subscriber information in these cases will only lead to name of the entity and is unlikely to yield any identifying information about the actual infringer. Accordingly, granting early discovery for the subscriber information is not very likely to reveal the identities of Defendants.

*Malibu Media, LLC, v. John Does,* No. 2:12-01642 (ECF No. 32 at 4-5) (D.C. Cal. Oct. 10, 2012) (internal citations omitted)

Plaintiff here cannot demonstrate that the requested discovery will even lead to identification of the proper John Doe defendant. The prevailing accepted wisdom in district courts across the country is that an IP address does not equate to the infringer of a plaintiff's copyright and that merely identifying the individual who pays the internet bill associated with a particular ISP account does not identify the individual who may have infringed a copyright via that IP

10

address.  As the court in *SBO Pictures* understood, "the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the internet connection for illicit purposes." *SBO Pictures, Inc.*, *supra*, 2011 WL 6002620, at *3.  *See also VPR Internationale v. Does 1-1,017,* No. 11-02068 (ECF No. 15 at 2 ), 2011 WL 8179128 (C.D. Ill. Apr. 29, 2011) ("Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect . . . .  The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.")

"Several courts have found it troubling that the subscriber associated with a given IP address may not be the person responsible for conduct traceable to that IP address." *Malibu Media, LLC v. Doe,* No. 8:13-cv-00365 (ECF No. 60 at 7), 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014); *see Patrick Collins, Inc. v. Doe 1,* 288 F.R.D. 233, 237-39 (E.D.N.Y. 2012) (an IP address is insufficient to identify an infringer because "the actual device that performed the allegedly infringing activity could have been owned by a relative or guest of the account owner, or even an interloper without the knowledge of the owner"); *Patrick Collins, Inc. v. John Does 1-4,* No. 1:12-cv-02962 (ECF No. 7 at 2), 2012 WL 2130557, at *1 (S.D.N.Y. June 12, 2012) (Baer, J.) ("The fact that a copyrighted work was illegally downloaded from a certain IP address does not necessarily mean that the owner of that IP address was the infringer."). (All cases cited in *Manny Film, LLC, v. John Doe Subscriber Assigned IP Address 66.229.140.101,* No. 0:15-cv-60446 (ECF No. 10) (S.D. Fla. April 8, 2015)).

The District of New Jersey held in at least four (4) cases that the release of the same personal information plaintiff here seeks

could impose an undue burden on individuals who may have provided their information to an ISP, but did not engage in the alleged illegal distribution of Plaintiff's work.

\* \* \*

Plaintiff must go beyond the "limited discovery" that it asserted would lead to the John Doe defendants' identities.  The burdens associated with the potentially expansive and intrusive discovery that Plaintiff may need to propound in order to obtain the John Doe defendants' identities likely outweighs Plaintiff's need for expedited discovery.

*Malibu Media, LLC, v. John Does 1-11,* 12-07615 (ECF No. 8 at 6-7) (D.N.J. Feb. 26, 2013); *Modern Woman, LLC, v. Does 1-X,* 12-04859 (ECF No. 6 at 7) (D.N.J. Feb. 26, 2013);  *Modern Woman, LLC, v. Does 1-X,* 12-04860 (ECF No. 6 at 7) (D.N.J. Feb. 27, 2013);  *Modern Woman, LLC, v. Does 1-X,* 12-04858 (ECF No. 6 at 7) (D.N.J. Feb. 27, 2013).

*Accord Third Degree Films, Inc., v. John Does 1-110,* No. 12-5817 (ECF No. 7 at 3) (D.N.J.

Jan. 17, 2013) (Order denied a motion for Rule 45 subpoenas and expedited discovery because

[i]n some instances, the IP subscriber and the John Doe defendant may not be the same individual.  Indeed, the infringer might be someone other than the subscriber; for instance, someone in the subscriber's household, a visitor to the subscriber's home or even someone in the vicinity that gains access to the network.  *See VPR Internationale v. Does 1-1,017,* No. 11-2068 (ECF No. 15), 2011 WL 8179128 (C.D. Ill. Apr. 29, 2011).  As a result, Plaintiff's sought after discovery has the potential to ensnare numerous innocent internet users into the litigation placing a burden on them that outweighs Plaintiff's need for discovery as framed.).

Indeed, other decisions from this District cited in the July 6, 2015, decision have noted

the non-connection between a mere IP address and the actor.

"The fact that a copyrighted work was illegally downloaded from a certain IP address does not necessarily mean that the owner of that IP address was the infringer. Indeed, the true infringer could just as easily be a third party who had access to the internet connection, such as a son or daughter, houseguest, neighbor, or customer of a business offering internet connection."  *Patrick Collins, Inc. v. Does 1-6,* No. 1:12-cv-02964 (ECF No. 7), 2012 WL 2001957, at \*1 (S.D.N.Y. June 1, 2012) (Oetkin, J.) (internal citations omitted);  *see also In re BitTorrent Adult Film Copyright Infringement Cases,* No. 12-01147 (ECF No. 4), 2012 WL 1570765 (E.D.N.Y. May 1, 2012) ("[T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time.");  *Digital Sin, Inc. v. John Does 1-176,* 279 F.R.D. 239, 242 (S.D.N.Y. 2012) (Nathan, J.) (Judge Nathan finding that approximately **30% of John Does identified by their internet service providers are not the individuals who actually downloaded the allegedly infringing films)**.  The risk of misidentification is great in a world with

12

ubiquitous Wi-Fi, and given courts' concerns that these sorts of allegations - especially by this plaintiff - are likely to coerce even innocent defendants into settling, the risk of misidentification is important to protect against.

*Malibu Media, LLC, v. John Doe subscriber assigned IP address 66.108.67.10,* No. 1:15-cv-04369 (ECF No. 10 at 9-10) (S.D.N.Y. July 6, 2015) (emphasis added) (Hellerstein, J.).

Courts in other districts also have concluded that an IP address "may not be a sufficient basis on which a plausible claim can lie against a subscriber." *Malibu Media, LLC v. Doe,* No. 8:13-cv-00365 (ECF No. 60 at 7), 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014); *see Elf-Man, LLC v. Cariveau,* No. 2:13-00507 (ECF No. 78), 2014 WL 202096, at *2 (W.D. Wash. Jan. 17, 2014) ("While it is possible that one or more of the named defendants was personally involved in the download, it is also possible that they simply failed to secure their connection against third-party interlopers."); *Malibu Media, LLC v. Tsanko,* No. 12-3899, 2013 WL 6230482, at *10 (D.N.J. Nov. 30, 2013) ("The Court questions whether these allegations are sufficient to allege copyright infringement stemming from the use of peer-to-peer file sharing systems where the defendant-corporation is connected to the infringement solely based on its IP address.  It may be possible that defendant is the alleged infringer that subscribed to this IP address, but plausibility is still the touchstone of *Iqbal*[3] and *Twombly*.[4]"); *AF Holdings LLC v. Rogers,* No. 3:12-cv-01519 (ECF No. 14), 2013 WL 358292, at *3 (S.D. Cal. Jan. 29, 2013) ("Due to the risk of 'false positives,' an allegation that an IP address is registered to an individual is not sufficient in and of itself to support a claim that the individual the touchstone of *Iqbal* and *Twombly*."); *AF Holdings LLC v. Rogers,* No. 12-cv-1519, 2013 WL 358292, at *3 (S.D. Cal. Jan. 29, 2013) ("Due to the risk of 'false positives,' an allegation that an IP address is registered to an individual is not sufficient in and of itself to support a claim that the individual is

---

[3] *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

[4] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2008).

guilty of infringement."). *Accord*, *Manny Film, LLC, v. John Doe Subscriber Assigned IP Address 66.229.140.101,* No. 0:15-cv-60446 (ECF No. 10) (S.D. Fla. April 8, 2015).

Thus, because the discovery sought by plaintiff in this case only will identify the ISP subscriber and not the infringer, the discovery sought in the subpoena is not likely to lead to the identity of the allegedly infringing Doe defendant or allow plaintiff to effectuate service thereon.

Defendant submits that this Court should heed the concerns expressed, *supra*, (1) about the coercive procedures typically utilized by plaintiffs to extract and extort settlements from putative defendants without ever actually litigating the case on the merits; and (2) disclosing defendant's name and address will reveal only the internet subscriber – not a person likely to have committed the acts complained of (if they were committed at all).

Accordingly, there is good cause for this Court to vacate its prior Order and Quash the Subpoena issued to Verizon to prevent the release of this defendant's identity.

## CONCLUSION

Plaintiff herein names John Doe in this suit based solely on the allegation that John Doe's geographical location was assigned the IP address through which someone allegedly downloaded various works  As recognized by judges in this District and multiple courts throughout this country, this is an inappropriate basis turning over defendant's name and address to plaintiff. For the reasons above, John Doe subscriber assigned IP address 108.46.43.152 respectfully requests that the Court Vacate its prior Order of December 4, 2017, granting plaintiff permission to serve a subpoena on Verizon, and enter of an Order Quashing the subpoena issued to ISP Verizon to prevent it from divulging defendant's name, address and other identifying information.

Respectfully submitted,
LESLIE A. FARBER, LLC


/s/ Leslie A. Farber

Dated: January 15, 2018                    By:    Leslie A. Farber
                                                   eMail: LFarber@LFarberLaw.com