**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X
                                                    :
STRIKE 3 HOLDINGS, LLC,                             :
                                                    :        Case No. 1:17-cv-08956-AKH
                              Plaintiff,            :
                                                    :
              vs.                                   :
                                                    :
                                                    :
JOHN DOE subscriber assigned IP address             :
108.46.43.152,                                      :
                                                    :
                              Defendant.            :
------------------------------------------------------------------X


<u>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO QUASH**</u>
<u>**SUBPOENA OR FOR PROTECTIVE ORDER**</u>

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ..................................................................................................... 3

II.    FACTS ...................................................................................................................... 4

III.   LEGAL STANDARD ............................................................................................... 5

IV.   ARGUMENT ............................................................................................................ 5

   A.   Plaintiff's Subpoena Seeks Relevant Information ............................................. 5

      1.   The Limited Information Plaintiff's Subpoena Requests Is Relevant............................ 5

      2.   Defendant's Possible Defense to Infringement is Not Grounds to Quash the Subpoena  7

   B.   Verizon's Compliance with Plaintiff's Subpoena Does Not Impose an Undue Burden, Embarrassment, or Annoyance on Doe Defendant........................................................ 8

V.     CONCLUSION....................................................................................................... 11

EXHIBIT A................................................................................................................... 13

## I.   __INTRODUCTION__

In this online copyright infringement action, Plaintiff cannot identify and serve Defendant without the information subpoenaed from his or her ISP. [*See generally* CM/ECF 7]. This Court should not quash the subpoena because it seeks relevant information and is not unduly burdensome or coercive.   Indeed, Plaintiff's subpoena is just seeking Defendant's name and address so that Plaintiff can serve Defendant with the Complaint.   And, Plaintiff encourages Defendant to proceed anonymously to the public in the litigation under a protective order. Although Defendant attempts to stitch a scarlet letter on Plaintiff for being a "copyright troll" – what Defendant defines as "an owner of a valid copyright who brings an infringement action not to be made whole, but rather as a primary or supplemental revenue stream"–Defendant fails to support this with any facts. [CM/ECF 10, at 2 n.1 (citations omitted)].   Plaintiff owns a successful entertainment company that makes the majority of its income from sales of its content, and Plaintiff is being hit very hard by piracy.   *See* Declaration, Exhibit A.   In this case, Defendant is one of the worst of the worst infringers, and does not even deny committing the infringement.

Defendant's arguments in favor of quashing the subpoena are meritless, and have been rejected by this Court and others in cases raising similar facts. The limited information sought in the Subpoena is relevant because the case cannot proceed without it. Additionally, Defendant lacks standing to assert an undue burden because he or she is not the recipient of the subpoena. But even if Defendant could, no burden exists, particularly in light of Plaintiff's willingness to offer a protective order.   Finally, Defendant does not (and cannot) point to any actual misconduct on Plaintiff's behalf.   For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's motion.

## II.   <u>FACTS</u>

Plaintiff owns the intellectual property to *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen,* highly well regarded, award-winning, adult entertainment studios. [Declaration of Greg Lansky, Exhibit A ¶ 3, 19)]. Strike 3's philosophy is to hold itself above the rest: higher budgets, higher compensation for its actors and actresses, and higher end productions. *Id.* at ¶ 7–8, 11–13, 15. Despite its success, Strike 3 does not rest on its back-catalogue and is continually seeking out new opportunities and ventures to provide subscribers with a better experience. *Id.* at ¶ 15. Plaintiff's business has "raised the bar" for the rest of the industry, "leading more adult studios to invest in better content, higher pay for performers, and to treat each performer like an artist." *Id.* at ¶ 25.

As a result of its higher production and talent costs, Strike 3 is sensitive to the loss of revenue mass copyright infringement threatens. *Id.* at ¶ 22. Despite attempting to mitigate the infringement outside the courts, *see id.* at ¶ 26 (sending thousands of DMCA takedowns to infringing websites), lawsuits like this have become an option of last resort. *Id.* at ¶ 27. Plaintiff is mindful of the litigation, and its goal is not to embarrass anyone, or force anyone to settle unwillingly, especially anyone that is innocent. *Id*. at ¶ 28. Because of this, Plaintiff strives to file only strong cases against extreme infringers. *Id*. at ¶ 29. Each lawsuit seeks to stop only those infringers who engage in not only illegal downloading, but also in large scale unauthorized distribution of Plaintiff's content. *Id.* All defendants pursued in litigation have distributed, at a minimum, at least 15% of Strike 3's entire copyrighted library. *Id.*  And, contrary to Defendant's accusations, Plaintiff does not seek settlements unless initiated by defendant or his counsel, nor does it send demand letters, or make any attempt to contact Defendant prior to service. *Id*. at ¶ 30.

Plaintiff is a respected entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs, and licenses. *Id*. at 32. This litigation is not a business model. *Id*. Plaintiff's goal is to deter piracy and redirect the infringement back into legitimate sales. *Id* Proceeds Plaintiff receives from settlements go back into making the company whole, including investing in better pay for artists and performers, better quality productions and creating jobs. *Id*.

## III.   LEGAL STANDARD

"[T]he party seeking to quash a subpoena bears a heavy burden of proof." *Kirschner v. Klemons*, No. CV 99-4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (citation omitted). The Federal Rules of Civil Procedure are clear: courts will only quash or modify a subpoena under six circumstances. *See* Fed. R. Civ. P. 45(d)(3)(A)–(B). Those include whether the subpoena (1) "fails to allow a reasonable time to comply"; (2) requires a non-party to travel beyond certain geographical limits; (3) requires disclosure of privileged materials; (4) subjects a person to "undue burden"; (5) requires disclosure of "a trade secret or other confidential research, development, or commercial information"; or (6) requires disclosure of certain expert opinions. *Id.* "No other grounds are listed." *Crocs, Inc. v. Effervescent, Inc.*, No. CV 06-00605-PAB-KMT, 2017 WL 3888455, at *2 (D. Colo. Jan. 30, 2017) (collecting cases). "Absent a finding by a court that a valid basis exists to quash a subpoena, the party receiving the subpoena *must comply* with it. *Id.* (collecting cases) (emphasis original).

## IV.   ARGUMENT

### A.   Plaintiff's Subpoena Seeks Relevant Information

#### 1.   The Limited Information Plaintiff's Subpoena Requests Is Relevant

"[S]ubpoenas issued under Rule 45 are 'subject to the relevance requirement of Rule 26(b)(1) . . . .'" *Malibu Media, LLC v. Doe*, No. CV 15-3147 (AJN), 2016 WL 5478433, at *2

(S.D.N.Y. Sept. 29, 2016) (quoting *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011) (alteration and emphasis in original)). "Rule 26 applies broadly, permitting parties to 'obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" *Id.* at *4 (quoting Fed. R. Civ. P. 26(b)(1)).

As a preliminary matter, since "the party issuing the subpoena bears the initial burden of demonstrating 'the relevance of the requested documents' the party seeking to quash the subpoena bears the burden of demonstrating' [lack of relevance.]" *See id.* at *2. In the Second Circuit, the standard for "good cause" for leave to serve subpoenas on ISPs prior to a Rule 26(f) conference is the same standard used to determine whether denial of a motion to quash is appropriate. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (noting the five factor analysis is the "appropriate general standard for determining whether a motion to quash . . . should be granted"); *Strike 3 Holdings, LLC v. Doe*, No. CV 3:17-1680 (CSH), 2017 WL 5001474, at *7 n.10 (D. Conn. Nov. 1, 2017) ("In considering whether to make a motion to quash the subpoena or proceed anonymously, Defendant is reminded that the Court has already analyzed the requisite principal factors to determine that such a subpoena should be allowed under [*Arista.*]"). Plaintiff has presented this Court with its reasons for why the *Arista* standard favors leave to serve the Subpoena, particularly that the information requested is "highly specific" and "critical" to Plaintiff's case, *Malibu Media*, No. CV 15-3147 (AJN), 2016 WL 5478433 at *2; [CM/ECF 7, at 7–8], and this Court has found the facts of this case favor permitting the subpoena. [*See* CM/ECF 9, at ¶1]. Plaintiff's subpoena only seeks two relevant points of data: Defendant's name and address. [*See* CM/ECF 10-3 (attaching subpoena)].

2.   *Defendant's Possible Defense to Infringement is Not Grounds to Quash the Subpoena*

Defendant incorrectly argues that just because the subscriber of the IP address may not be the infringer, the subpoena is not relevant. [*See generally* CM/ECF at 10-2, at 10–14].[1] This argument is nothing more than a defense.  It has been raised in this Court, as well as courts across the country,[2] and it has been soundly rejected. "Defendant's argument that another party is responsible for the infringing conduct may be advanced later as a defense, but it does not constitute a reason to quash the subpoena, because '[o]btaining Doe's contact information 'is the logical first step in identifying the correct party." *Malibu Media, LLC v. Doe*, No CV. 15-7788 (KMW), 2016 WL 1651869, at *3 (S.D.N.Y. Apr. 26, 2016) (citations omitted).

> Defendant highlights that it is possible for the subscriber associated with an IP address not to be responsible for copyright infringement traceable to that IP address. He posits that the infringer could be "someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at   any   given   moment." Nowhere,   however,   does   Defendant   link the *possibility* that he is not the infringer to an accepted basis for quashing a subpoena.

*Malibu Media*, No. CV 15-3147 (AJN), 2016 WL 5478433 at *3 (citations omitted). "Here, the information sought by the subpoena—Defendant's identifying information—*unquestionably is relevant* to [Plaintiff]'s claim that Defendant infringed its copyrights. To be sure, there is a 'risk of false positives,' in that [Plaintiff] cannot say with *certainty* that Defendant was the infringer,

---

[1] Indeed, at points Defendant mixes the *Iqbal* and *Tombly* Motion to Dismiss standard with the relevance standard. [*See* CM/ECF 10-2, at 13]. "Nowhere, however, does Defendant link the *possibility* that he is not the infringer to an accepted basis for quashing a subpoena." *Malibu Media, LLC v. Doe*, No. CV 15-3147 (AJN), 2016 WL 5478433, at *3 (S.D.N.Y. Sept. 29, 2016); *see Malibu Media LLC v. Doe Subscriber Assigned IP Address 69.244.145.197*, No. CV 13-11432, 2013 WL 12183671, at *3 (E.D. Mich. Sept. 20, 2013) ("Defendant's reliance on the 12(b)(6) motion as a factor for quashing the subpoena, such a factor is not present in Rule 45.").

[2] *See e.g.*, *Plastic the Movie Ltd. v. Doe*, No. CV 15-2446 JHR/JS, 2015 WL 4715528, at *2 (D.N.J. Aug. 7, 2015) ("The appropriate inquiry under Rule 26(b)(1) is not whether the information sought will lead to identifying the infringer but whether the information sought may reasonably lead to the discovery of admissible evidence.") *Malibu Media, LLC v. Doe*, No. CV 1:13-00674-LJM, 2013 WL 5177076, at *1 (S.D. Ind. Sept. 12, 2013) ("As this is a discovery issue, Plaintiff is entitled to see this relevant information which is reasonably calculated to lead to the discovery of admissible evidence [and] the third party subpoenas are proper.") (citation omitted).

but identifying Defendant is a necessary step in making that determination." *Id.* at *4 (emphasis supplied). As a result, Defendant's argument that Plaintiff's subpoena is irrelevant is erroneous.

**B. Verizon's Compliance with Plaintiff's Subpoena Does Not Impose an Undue Burden, Embarrassment, or Annoyance on Doe Defendant**

"Once relevance has been established, 'the movant bears the burden of demonstrating an undue burden.'" *Shaw v. Arena*, No. MC 17-0448 (AJN), 2018 WL 324896, at *2 (S.D.N.Y. Jan. 3, 2018) (citation omitted). "Because the burden is on the party seeking to quash a subpoena, that party cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009) (citation omitted). Despite assembling a parade of hypotheticals and *ad hominem* attacks, Defendant's "concerns are not tethered to the realities of these cases." *Toussie v. Allstate Ins. Co.*, No. CV 14-2705-FB-CLP, 2017 WL 4773374, at *2 (E.D.N.Y. Oct. 20, 2017) (criticizing the moving party's unsupported privacy arguments).

First, Defendant is not even required to comply with the subpoena, so cannot assert an undue burden "[b]ecause the subpoena does not obligate Defendant to do or produce anything . . . ." *See Malibu Media*, No. CV 15-3147 (AJN), 2016 WL 5478433 at *3. "[Courts] have extensively addressed this issue in copyright BitTorrent actions similar to the instant case, and those courts have held that John Doe Defendants generally have no standing to move to quash the subpoena that is issued to a third party, such as an ISP, on the basis of undue burden." *Malibu Media, LLC v. Doe No. 4*, No. CV 12-2950 JPO, 2012 WL 5987854, at *2 (S.D.N.Y. Nov. 30, 2012) (internal quotations and citations omitted). "While this Court is sensitive to the privacy concerns at issue in a case such as this one [Defendant's] legitimate concerns have no place within the undue burden calculus, as the burden of literal compliance with this subpoena falls to

a third-party, Verizon." *Id.* (citations omitted).

> Defendant's argument that there would be an undue burden on *him*, rather than on [the ISP], assumes that the 'undue burden' contemplated by Rule 45 can be something other than the burden of production on the recipient of a subpoena. That assumption is incorrect. Courts have consistently rejected the position that a party who is not the recipient of a subpoena can nonetheless challenge that subpoena because it creates an undue burden.

*Malibu Media*, No. CV 15-3147 (AJN), 2016 WL 5478433 at *3 (collecting cases); *see also Third Degree Films, Inc. v. Does 1-118*, No. CV 11-03006-AW, 2011 WL 6837774, at *3 (D. Md. Dec. 28, 2011) ("Defendants' argument that the subpoena presents an undue burden is unavailing because the subpoena is directed toward the ISPs and not the Doe Defendants and accordingly does not require them to produce any information or otherwise respond. "). Case law overwhelmingly supports the notion that Defendant lacks standing to claim undue burden in this instance.

But even if Defendant did have standing to raise undue burden, Defendant's arguments are deficient on the merits. Defendant has failed to produce any evidence, beyond innuendo, that Plaintiff will use its litigation posture to coerce Defendant. Defendant notes that Plaintiff "*would likely* send settlement demands" and that Plaintiff has "no desire to actually litigate." [*See* CM/ECF 10-2, at 7–8 (quoting cases discussing different plaintiffs)]. Plaintiff has never sent settlement demands, nor does it ever intend to do so.  *See* Exhibit A ¶ 30.  And even if it did – which it does not – Defendant is represented by counsel, who will shield Defendant from any communications.

In addition, Defendant attempts to conflate Strike 3 with other BitTorrent copyright plaintiffs, painting Strike 3 with broad strokes as a "copyright troll." [CM/ECF 10-2, at 8–9 (quoting *Malibu Media, LLC v. Doe*, No. CV 15-4369 AKH, 2015 WL 4092417, at *2 (S.D.N.Y.

July 6, 2015))][3]. This is a red herring. Tellingly, Defendant presents no evidence, cites no authority, and proffers no discussion about why Strike 3 is a "copyright troll." Plaintiff's ability to pursue its valid claim for copyright infringement should not be hindered by actions of unrelated plaintiffs in other cases.  And, as Plaintiff states in its declaration, "[o]ur copyrights are the foundation of our livelihood.  Our copyrights enable us to open our office doors each day, pay our employees, make a difference in our community and create motion pictures that raise the industry standard.  We have to protect them."  *See* Exhibit A, ¶ 34.  Plaintiff is enforcing its rights as the Copyright Act intended - it is *not* a so called "copyright troll."

Regardless, the Federal Rules of Civil Procedure, along with this Court's inherent authority to manage its docket and direct the flow of litigation, provide substantial protections for Defendant. *Cf. Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015) ("[D]istrict courts no doubt enjoy an inherent authority to manage their dockets . . . ."). If Defendant's baseless potential for abuse standard were enough to quash the subpoena, Plaintiff would be left with a right without a remedy. "[G]ranting the motion to quash would effectively end the litigation [Plaintiff] has been pursuing against Doe, because [Plaintiff] would not be able to serve Doe" *Malibu Media, LLC. v. Doe*, No. CV 15-1834 JGK, 2015 WL 4403407, at *2 (S.D.N.Y. July 20, 2015).

Although Defendant has not requested it, Plaintiff respectfully suggests that Defendant be allowed to proceed anonymously so that he or she may not risk any public embarrassment. "[T]he Court believes that Defendant's concern about the potential for embarrassment and stigma

---

[3] Indeed, Defendant refers to Plaintiff as a "copyright troll," but Defendant's own Statement of Facts appears to be incorrectly cut and pasted from a nearly identical motion Defendant's counsel filed over two years ago, in a case with a different Plaintiff.  *See Malibu Media v. John Doe*, 1:15-cv-03147-AJN (September 13, 2015, CM/ECF 16) (compare page 2 stating "with a Subpoena dated May 22, 2015, returnable September 29, 2015, which seeks John Doe's real name and address" with page 2 of Defendant's Motiom CM/ECF 10 stating incorrect subpoena dates identically matching the former motion.  It is worth noting that Judge Nathan denied Defendant's counsel's nearly identical motion.  *See Id*, CM/ECF 27.

from being publicly named as a consumer of pornographic films (and the corresponding likelihood of a coercive and unfair settlement) is largely mitigated by providing the Defendant with the opportunity to litigate the suit anonymously." *Malibu Media*, No CV. 15-7788 (KMW), 2016 WL 1651869 at *3. Plaintiff believes in a consumer's choice of what content to enjoy, whether it be adult entertainment or otherwise, is a personal one to the consumer. *See* Exhibit A at ¶ 33. Because of this, Plaintiff's policy is to keep confidential the identity of not only its lawful customers, but even those who infringe its content. *Id.* Although the Court's Order does not discuss allowing Doe Defendant to proceed pseudonymously, and Defendant's Motion to Quash does not include a motion for a protective order, Fed. R. Civ. P. 26(c), Plaintiff welcomes an order allowing Defendant to proceed to the public anonymously. *Cf. Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831, 837 (6th Cir. 2017) (finding that "like the general presumption of open judicial records, there is also a presumption in favor of unmasking anonymous defendants" which is why Plaintiff needs an affirmative court order to keep Defendant's name anonymous).

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Quash.

Respectfully submitted,

By: */s/ Jacqueline M. James*
Jacqueline M. James, Esq. (1845)
The James Law Firm, PLLC
445 Hamilton Avenue
Suite 1102
White Plains, New York 10601
T: 914-358-6423
F: 914-358-6424
E-mail: jjameslaw@optonline.net
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 23, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: <u>/s/ *Jacqueline M. James*</u>

## DECLARATION OF GREG LANSKY IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(F) CONFERENCE

I, Greg Lansky, do hereby state and declare as follows:

1.      I am a member of General Media Systems, LLC, the parent company that owns Strike 3 Holdings, LLC ("Strike 3").  I am the Chief Creative Officer of the *Blacked, Blacked Raw, Tushy,* and *Vixen* adult brands.

2.      I have personal knowledge of all of the matters contained in this declaration and, if called and sworn as a witness, I can and competently will testify to all matters contained herein.  This declaration is made in support of Plaintiff's Motion for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference.

3.      Strike 3 owns the intellectual property to the *Blacked, Blacked Raw, Tushy,* and *Vixen* adult brands, including the copyrights to each of the motion pictures distributed through *Blacked, Blacked Raw, Tushy* and *Vixen* and the trademarks to each of the brand names and logos.  Strike 3 is owned entirely by our company General Media Systems, LLC and has existed since 2015.

4.      I moved to the United States in 2006 from Paris, France to pursue my dream of creating art in an adult context. I have always been passionate about photography and cinematography.

5.      It was a difficult start - I could barely speak English, and I had trouble making connections and finding employment.  I struggled for several years to make a name for myself as a reliable photographer and director.

6.      Eventually, after tremendous hard work, I was fortunate to be hired by some of the biggest adult brands in the world.  Through these experiences, I was able to establish myself and become an expert in the field.

7.      In 2013, I decided to risk everything to create my own company and studio.  As a director, I felt the industry and I were not offering the best quality and experience possible. I felt I was not offering truly inspiring projects for performers to express their art.

**EXHIBIT A**

8.      At the time, the adult market was demoralized and it appeared that a high-quality, well produced, subscription based website would never succeed.

9.      I can still remember when our company was just three people in my small home office.

10.     We kept growing and after a few years, our brands turned into a multi-million dollar a year business.  We now have 20 million unique visitors to our websites per month and a loyal following.

11.     Our company's philosophies are important.

12.     We always strive to pay artists and models an amount above that being paid by other companies.  Indeed, we are known for paying our performers the highest rates ever recorded.  Empowering the artists and especially the women we work with is at the core of our company.

13.     We focus on delivering to our subscribers and fans superior quality adult films and a wonderful customer experience. People thought we were crazy to think that people wanted to pay for expensive quality adult films and we were told that we were destined to fail.  Now, we have a substantial and loyal customer base.

14.     We provide jobs for nearly 75 people worldwide.  We provide good benefits including health care coverage and have an extremely positive company culture.  Our recent new employees include production managers, video editors, marketing specialists, accountants, and HR representatives.

15.     Our movies are known for having the highest production budget of any in the industry.  We invest in and utilize state of the art cinematic equipment. We film using Hollywood industry standards.  And, as our subscriber base grows, we always seek to find ways to invest in value for our customers.

16.     Because of this, we have a subscriber base that is one of the largest of any adult sites in the world.

17.     We are also currently the number one seller of adult DVDs in the United States.

**EXHIBIT A**

18.     Our content is licensed throughout the world, including by most major cable networks.

19.     Our success has not gone unnoticed.  Indeed, we are very proud to state that our unique cinematic films have won many awards.  It's humbling.  Some of them include:

- o  Best New Studio (XBIZ, 2017)

- o  Studio of the Year (XBIZ, 2018)

- o  Best Cinematography (AVN, 2016)

- o  Director of the Year (AVN, 2016-2017; XBIZ, 2017-2018)

- o  Best Director – (XRCO, 2016-2017)

- o  Best Membership Website (AVN, 2016-2017)

- o  Adult Site of the Year – (XBIZ, 2015-2017)

- o  Best marketing campaign – company image (AVN, 2016-2017)

- o  Marketing Campaign of the Year (XBIZ, 2018)

- o  Greg Lansky - Lifetime Achievement Award (Nightmoves)

- o  Vignette Series of the Year (XBIZ, 2018)

20.     We also are routinely featured in the mainstream media.  Recently, Forbes,[1] The Daily Beast,[2] and CBC Radio[3] have all done substantial profiles on us.  We are also currently working on a project with BuzzFeed.

21.     We are proud of our impact on the industry.  We have raised the bar in the industry - leading more adult studios to invest in better content, higher pay for performers, and to treat each performer like an artist. That is a testament to the entire team, the company we have built and the movies we create.

---

[1] "How One Pornographer is Trying to Elevate Porn to Art," *Forbes* July 20, 2017 https://www.forbes.com/sites/susannahbreslin/2017/07/20/pornographer-greg-lansky-interview/#2301d3ae6593
[2] "Meet the Man Making Porn Great Again," *The Daily Beast*, February 18, 2017 http://www.thedailybeast.com/meet-the-man-making-porn-great-again
[3] "Porn-o-nomics: How one director is making a fortune by defying conventional wisdom," *CBC Radio*, February 24, 2017 http://www.cbc.ca/radio/day6/episode-326-sanctuary-cities-la-la-land-vs-jazz-hollywood-in-china-porn-o-nomics-and-more-1.3994160/porn-o-nomics-how-one-director-is-making-a-fortune-by-defying-conventional-wisdom-1.3994167

**EXHIBIT A**

22.    Unfortunately, piracy is a major threat to our company.  We can compete in the industry, but we cannot compete when our content is stolen.

23.    We have discovered that when we put videos online for paid members to view, it takes as little as four minutes to be downloaded on to torrent websites.  We have attempted to identify the initial seeder but have found it impossible with the large volume of our subscriber base.

24.    We put a tremendous amount of time, effort and creative energy into producing and distributing valuable content for our paid customers.  It crushes us to see it being made available to anyone for free in just minutes.

25.    We are undeniably the most pirated adult content in the world.  Our movies are typically among the most pirated television shows and movies on major torrent websites.

26.    We send on average 50,000 Digital Millennium Copyright Act notices a month but it does virtually nothing to stop the rampant copyright infringement.

27.    The only effective way to stop the piracy of our movies on BitTorrent networks is to file lawsuits like this one.

28.    We are mindful of the nature of the litigation, and our goal is not to embarrass anyone, or force anyone to settle unwillingly, especially anyone that is innocent.  We are proud of the films we make.  We do not want anyone to be humiliated by them.

29.    Because of this, my company and our legal team strive to only file strong cases against extreme infringers.  Each lawsuit seeks to stop only those infringers who engage in not only illegal downloading, but also in large scale unauthorized distribution of our content.  All defendants pursued in Strike 3 litigation have distributed, at a minimum, at least 15% of Strike 3's entire copyrighted library.

30.    We also do not seek settlements unless initiated by the defendant or his counsel. We do not send demand letters nor make any attempt to contact a defendant prior to service.

31.    We are careful not to proceed with a case against a defendant unless we feel we have a strong case and a good faith basis for doing so.  We will not pursue defendants that

**EXHIBIT A**

provide substantiated exculpatory evidence.  Nor will we pursue defendants that have proven hardships.  Our clear objective is to be mindful and reasonable with each case.

32.   We are a respected entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs, and licenses.  This litigation is not a business model.  Our goal is to deter piracy and redirect the infringement back into legitimate sales.  Proceeds we receive from settlements go back into making our company whole, including investing in better pay for artists and performers, better quality productions, and creating jobs.

33.   We believe a consumer's choice of what content to enjoy, whether it be adult entertainment or otherwise, is a personal one to that consumer and therefore it is our policy to keep confidential the identity of not only our subscribers, but even those we are pursuing for copyright infringement.  We typically only reveal a defendant's identity if the defendant does not request confidentiality or if the Court in a particular action does not allow us to proceed with the defendant remaining anonymous.

34.   Our copyrights are the foundation of our livelihood.  Our copyrights enable us to open our office doors each day, pay our employees, make a difference in our community and create motion pictures that raise the industry standard.  We have to protect them.

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this _19_ day of _January_, 201_8_.

**GREGORY AOUIZERATE a.k.a GREG LANSKY**

**EXHIBIT A**